UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

HARVEY MILLER and TODD
K. LAMUNYON, individually,
and as Representatives of a Class
of Participants and Beneficiaries
of the Packaging Corporation of
America Retirement Savings
Plan For Salaried Employees,

      Plaintiffs,

      v.

PACKAGING CORPORATION OF
AMERCIA, INC., et al.

      Defendants.

Case No: 1:22-cv-00271

Judge Hala Y. Jarbou

Magistrate Judge Ray Kent

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................................. iii

INTRODUCTION .............................................................................................................................. 1

BACKGROUND ................................................................................................................................ 2

   I.    PLEADINGS AND MOTIONS ................................................................................................. 2

   II.   MEDIATION AND SETTLEMENT ........................................................................................... 3

   III.  OVERVIEW OF SETTLEMENT TERMS ................................................................................... 3

      A.   The Settlement Class ........................................................................................... 3

      B.   Monetary Relief .................................................................................................... 4

      C.   Release of Claims ................................................................................................ 4

      D.   Class Notice and Settlement Administration ....................................................... 6

      E.   Attorneys' Fees and Administrative Expenses ..................................................... 6

      F.   Review by Independent Fiduciary ....................................................................... 6

ARGUMENT ................................................................................................................................... 7

   I.    STANDARD OF REVIEW ...................................................................................................... 7

   II.   THE SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL .......................... 8

      A.   The Class Is Adequately Represented ................................................................. 8

      B.   The Proposal Was Negotiated at Arm's-Length .................................................. 8

      C.   The Settlement Terms Are Fair and Adequate .................................................... 9

      1.    The Monetary and Prospective Relief Is Significant ........................................... 9

      2.    The Risks, Costs, and Delay of Further Litigation Were Significant ................... 10

      3.    The Proposed Method of Distributing Relief to The Class Is Effective .............. 11

      4.    The Settlement Imposes a Reasonable Limitation on Attorney's Fees ............... 11

      5.    No Separate Agreements Bear on the Adequacy of Relief to the Class .............. 11

      6.    The Settlement Treats Class Members Equitably ................................................ 12

      7.    The Class Notice Plan is Reasonable and Should be Approved .......................... 12

      8.    The Proposed Class Should be Certified for Settlement Purposes ..................... 13

    A.   THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23(A) ........................................13

    B.   THE PROPOSED CLASS SATISFIES RULE 23(B)(1)..................................................................14

CONCLUSION.................................................................................................................................15

CERTIFICATE OF SERVICE .........................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbott v. Lockheed Martin Corp.*,
  2015 WL 4398475 (S.D. Ill. July 17, 2015) ........................................................... 10

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n*,
  No. 17-cv-00563, Dkt. 211 (May 20, 2020),
  approved 2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020).............................................. 9

*Beesley v. Int'l Paper Co.*,
  No. 3:06-cv-00703, Dkt. 559 (S.D. Ill. Jan. 31, 2014) .......................................... 10

*Bell v. Pension Comm. of ATH Holding Co.*,
  2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ......................................................... 11

*Berry v. Sch. Dist. of City of Benton Harbor*,
  184 F.R.D. 93 (W.D. Mich. 1998) ........................................................................... 6

*Dolins v. Cont'l Cas. Co.*,
  No. 1:16-cv-08898, Dkt. 133 (N.D. Ill. Sept. 20, 2018) ................................... 8, 11

*Elliott v. LVNV Funding, LLC*,
  2019 WL 4007219 (W.D. Ky. Aug. 23, 2019) ......................................................... 6

*Gen. Tel. Co. v. Falcon*,
  457 U.S. 147 (1982) ............................................................................................... 13

*Godfrey v. GreatBanc Tr. Co.*,
  2021 WL 679068 (N.D. Ill. Feb. 21, 2021) ...................................................... 13, 14

*Gomez v. St. Vincent Health, Inc.*,
  649 F.3d 583 (7th Cir. 2011), *as modified* (Sept. 22, 2011) ……………….......... 13

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................... 12

*In re Household Int'l, Inc. ERISA Litig.*,
  2004 WL 7329911 (N.D. Ill. Nov. 22, 2004) ......................................................... 15

*In re Rite Aid Corp. Sec. Litig.*,
  146 F. Supp. 2d 706 (E.D. Pa. 2001) ....................................................................... 8

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
  2015 WL 13650515 (E.D. Tenn. Jan. 16, 2015) ...................................................... 6

iii

*Karpik v. Huntington Bancshares Inc.*,
    2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ............................................................. 7, 9, 10

*Kinder v. Koch Indus., Inc.*,
    2021 WL 3360130 (N.D. Ga. July 30, 2021) ................................................................. 10

*Koenig v. USA Hockey*,
    2012 WL 12926023 (S.D. Ohio Jan. 10, 2012) ............................................................. 7

*Krueger v. Ameriprise*,
    2015 WL 4246879 (D. Minn. July 13, 2015) ................................................................. 9

*Macy v. GC Servs. Ltd. P'ship*,
    2019 WL 6684522 (W.D. Ky. Dec. 6, 2019) ............................................................. 5, 12

*Neil v. Zell*,
    275 F.R.D. 256 (N.D. Ill. 2011) ....................................................................... 12, 13, 14

*Peck v. Air Evac EMS, Inc.*,
    2019 WL 3219150 (E.D. Ky. July 17, 2019) ................................................................. 5

*Pelzer v. Vassalle*,
    655 F. App'x 352 (6th Cir. 2016) ............................................................................... 5

*Phillips Petrol. Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................................. 11

*Price v. Eaton Vance Corp.*,
    No. 18-12098, Dkt. 32 (May 6, 2019), approved Dkt. 57 (D. Mass. Sept. 24, 2019 ...................... 8

*Retired Chi. Police Ass'n v. City of Chicago*,
    7 F.3d 584 (7th Cir. 1993) ....................................................................................... 13

*Rozo v. Principal Life Ins. Co.*,
    2021 WL 1837539 (S.D. Iowa Apr. 8, 2021) ................................................................. 9

*Rush v. GreatBanc Tr. Co.*,
    2021 WL 2453070 (N.D. Ill. June 16, 2021) ............................................................... 14

*Sacerdote v. New York Univ.*,
    328 F. Supp. 3d 273 (S.D.N.Y. 2018), *aff'd*, 9 F.4th 95 (2d Cir. 2021) ................................ 9

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ........................................................................... 8

*Sims v. BB&T Corp.*,
    2019 WL 1995314 (M.D.N.C. May 6, 2019) ................................................................. 8

*Snyder v. Ocwen Loan Serv'g,*
    2019 WL 2103379 (N.D. Ill. May 14, 2019) ........................................ 12

*Spano v. Boeing Co.,*
    2016 WL 3791123 (N.D. Ill. Mar. 31, 2016) ...................................... 10

*Toomey v. Demoulas Super Markets, Inc.,*
    No. 1:19-cv-11633, Dkt. 95 (Mar. 24, 2021), approved Dkt. 100, (D. Mass. Apr. 7, 2021) .......... 10

*UAW v. Gen. Motors Corp.,*
    497 F.3d 615 (6th Cir. 2007) .................................................... 8

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.,*
    2018 WL 8334858 (C.D. Cal. July 30, 2018) ...................................... 10

*Wildman v. Am. Century Servs., LLC,*
    362 F. Supp. 3d 685 (W.D. Mo. 2019) ............................................ 10

*Wong v. Accretive Health, Inc.,*
    773 F.3d 859 (7th Cir. 2014) .................................................... 9

**Statutes**
29 U.S.C. § 1109 ...................................................................... 12, 14
29 U.S.C. § 1132(a)(2) ................................................................ 12, 14

**Rules**
Fed. R. Civ. P. 23, Advisory Committee Note (1966) ..................................... 15
Fed. R. Civ. P. 23(c)(2)(B) ........................................................... 13
Fed. R. Civ. P. 23(e) Advisory Committee Note (2018) ................................... 9
Fed. R. Civ. P. Rule 23(a) ............................................................ 10, 12
Fed. R. Civ. P. (b)(1) ................................................................ 12, 13
Fed. R. Civ. P. 23(e) ................................................................. 7, 8, 14

**Treatises**
MANUAL FOR COMPLEX LITIGATION §§ 21.61–.63 (4th ed. 2004) ……............................ 7
Restatement (Third) of Trusts, § 100 cmt. (b)(1) ...................................... 10

# INTRODUCTION

Plaintiffs Harvey Miller and Todd K. Lamunyon ("Plaintiff") submit this Memorandum in support of their Motion for Preliminary Approval of the Class Action Settlement with Defendants, Packaging Corporation of America ("PCA"), the Board of Directors of the Packaging Corporation of America ("Board Defendants"), including individual Directors, Mark W. Kowlzan, Cheryl K. Beebe, Duane Farrington, Donna A. Harman, Robert C. Lyons, Thomas P. Maurer, Samuel M. Mencoff, Roger B. Porter, Thomas A. Souleles, and Paul T. Stecko, and the Investment Committee of the Packaging Corporation of America, including individual members Michelle Wojdyla, Robert P. Mundy, and Pamela A. Barnes ("Committee Defendants) (collectively, "Defendants"), relating to the management of the Packaging Corporation of America, Inc. Plan for Salaried Employees ("PCA Plan").[1]

Under the terms of the proposed Settlement, a Gross Settlement Amount of $1,300,000 millions dollars will be paid to resolve the claims of Settlement Class Members who participated in the Plan during the subject period. This is a significant recovery for the Class in relation to the claims that were alleged, and falls well within the range of negotiated settlements in similar ERISA cases.

For the reasons set forth below, the Settlement is fair, reasonable, and adequate, and merits preliminary approval so that notice may be disseminated to the class. Among other things:

- The Settlement was negotiated at arm's length with the assistance of a respected mediator;

- The Settlement provides for significant monetary relief that is on par with other settlements;

- The Settlement conveniently provides for automatic distribution of the settlement proceeds to the accounts of current participants in the Plans, while former participants will receive their distributions via check;

- The Released Claims are tailored to the claims that were asserted in the action or could have been asserted based on the same factual predicate;

---

[1] A copy of the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") is attached as **Exhibit A** to the accompanying Declaration of Paul Secunda ("Secunda Decl.").

- The proposed Settlement Class is consistent with the requirements of Rule 23;

- The proposed Settlement Notices provide substantial information to Class Members about the Settlement, and will be distributed via first-class mail; and

- The Settlement provides Class Members the opportunity to raise any objections they may have to the Settlement and to appear at the final approval hearing.

Accordingly, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement; (2) approving the proposed Notices and authorizing distribution of the Notices to the Settlement Class; (3) certifying the proposed Settlement Class; (4) scheduling a final approval hearing; and (5) granting such other relief as set forth in the accompanying Preliminary Approval Order. Defendants join in the relief requested by Plaintiffs' Motion for Preliminary Approval of Settlement. However, Defendants do not agree with the averments, statements, allegations, and claims stated by Plaintiffs in this Memorandum of Law in Support of the Motion for Preliminary Approval of Settlement.

## BACKGROUND

### I.    PLEADINGS AND MOTIONS

Plaintiffs Harvey Miller and Todd K. Lamunyon filed this action on March 23, 2022, *Dkt. 1*, and then filed an amended complaint on June 17, 2022. *Dkt. 14*. In their Amended Complaint, Plaintiffs allege that during the putative Class Period (March 23, 2016, through the date of judgment), Defendants, as fiduciaries of the Plan, as that term is defined under ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), breached the duty of prudence they owed to the Plan by requiring the Plan to pay excessive recordkeeping fees and managed account fees, and by failing to remove their high-cost recordkeepers and consultants, Alight Financial Solutions, LLC, and Aon Consulting (collectively "Alight"). *Id.*, ¶ 6. Plaintiffs alleged that Defendants breached their fiduciary duty of prudence also by offering needlessly expensive investment options, including unnecessary, high-cost share classes. *Id.* ¶ 7. On August 19, 2022, Defendants filed a motion to dismiss the Amended Complaint, *Dkts. 28-29*,

and the parties briefed that motion and followed up with numerous notices of supplemental authorities. *Dkts. 30-44.* Thereafter, on March 30, 2023, the Court denied in part and granted in part Defendants' motion to dismiss the Amended Complaint, dismissing the recordkeeping and managed account claims and allowing the investment claim to proceed. *Dkt.* 46.

Defendants then Answered the Amended Complaint on April 27, 2023, *Dkt. 49.* The Court then granted Plaintiffs' motion for leave to file a second amended complaint to add Plaintiff Lamunyon and revise the Plan investment underperformance claims on May 17, 2023. *Dkts. 58-59.* Defendants filed a motion to dismiss the Second Amended Complaint on June 14, 2023. *Dkts. 62-63.* Thereafter, Plaintiffs file motion to certify the class on June 28, 2023. *Dkts. 66-70.*

## II.   MEDIATION AND SETTLEMENT

The Parties engaged in a full-day facilitative mediation with a neutral mediator, Robert Meyer, on July 5, 2023,[2] *Secunda Decl. ¶ 10*, and the Parties reached a settlement in principle.  On July 7, 2023, the parties entered into a proposed stipulation staying the matter to allow the parties to draft a Settlement, *Dkt.* 71, and the Court entered a stay on the same day. *Dkt. 72.* The Parties then prepared the comprehensive Settlement Agreement that is the subject of this motion. *Secunda Decl.  ¶ 11.*

## III.   OVERVIEW OF SETTLEMENT TERMS

### A.   The Settlement Class

The Settlement applies to the following Settlement Class:

All participants and beneficiaries of the Plan, at any time during the Class Period, including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period, and any Alternate Payees, in the case of a person subject to a QDRO who was a participant in the Plan at any time during the Class Period. The Defendants are excluded from the Class.

---

[2] Mr. Meyer is an experienced mediator who has successfully facilitated the resolution of numerous complex class actions, including ERISA class actions. *Secunda Decl.* ¶ 10 *& Ex. B.*

*Settlement § 1.10.*  In turn, the Class Period means at any time on or after March 23, 2016, through the date of judgment.. *Id.* § 1.11. There are approximately 9,091 Settlement Class Members. *Secunda Decl. ¶ 3.*

**B.    Monetary Relief**

Under the Settlement, Defendants will contribute $1,300,000 dollars to a common settlement fund. *Settlement § 1.43.* After accounting for any Attorneys' Fees and Costs, Administrative Expenses, and class representative service awards approved by the Court, the Net Settlement Amount will be distributed to eligible Class Members. *Id. § 3.1.*

The Plan of Allocation will be prepared by Class Counsel and reviewed by Defendants, and will submitted to the Court for approval in connection with the Motion for Final Approval of the Settlement. *Id. § 3.2.(a).* Class Counsel has retained Analytics Consulting LLC[3] as the Settlement Administrator to calculate the amounts payable to Settlement Class Members. *Id. §4.1.* For those Settlement Class Members who have an account in the Plan as of the date of entry of the Final Approval Order (the "Current Participants"), the distribution will be made automatically into his or her account in the Plan. *Id. § 3.2.1(a).* For those Settlement Class Members who no longer have an account in the Plan at the time of the distribution of the share amounts owed to Class Members (the "Former Participants"), the Settlement Administrator shall issue a check from the Settlement Fund to each Former Participant in the amount equaling his or her pro-rata share of the Net Settlement Amount.[4] *Id. §3.2.2(a).*

**C.    Release of Claims**

In exchange for the foregoing relief, the Settlement Class will release Defendants and affiliated

---

[3] Analytics Consulting, LLC has been selected as the Settlement Administrator, and has extensive experience administering similar ERISA class action settlements. *Id. § 1.45; Secunda Decl. ¶ 28 & Ex. C.*

[4] Under no circumstances will any monies revert to Defendants. Any checks that are uncashed will be paid into the Plan for the purpose of defraying administrative expenses. *Id. § 3.4.*

persons and entities (the "Released Parties" as defined in the Settlement) from all claims:

> Subject to Part VIII of [the Settlement] Agreement, upon and through the date of the Court's entry of the Final Approval Order and Judgment, Plaintiff and each Class Member (on behalf of themselves and their current and former beneficiaries, heirs, descendants, dependents, marital community, administrators, executors, representatives, predecessors, successors, and assigns), and the Plan (by and through the Independent Fiduciary pursuant to Section 2.6) absolutely and unconditionally release and forever discharge all Defendant Released Parties from any and all Released Claims.

*Id.* § *5.1*. In turn, the "Released Claims" mean:

> Any and all actual or potential claims (including any Unknown Claims), actions, causes of action, demands, rights, obligations, damages, and liabilities (including claims for attorneys' fees, expenses, or costs), whether arising under federal, state, or local law, whether by statute, contract, tort, equity, or otherwise, whether brought in an individual or representative capacity, whether known or unknown, suspected or unsuspected, for monetary, injunctive, and any other relief against the Defendant Released Parties and Defendants' Counsel through the date the Court enters the Final Approval Order and Judgment: a. That were asserted in the Action, or that arise out of, relate to, are based on, or have any connection with any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions, occurrences or the conduct alleged or asserted in the Action or could have been alleged or asserted in the Action, whether or not pleaded in the Amended Complaint; b. That arise out of, relate to, are based on, or have any connection with: (1) the overall structure, management, or monitoring of the Plan's investment menu; (2) the selection, removal, monitoring, oversight, retention, fees, expenses, or performance of the investment options available under the Plan; (3) the selection, monitoring, oversight, retention, fees, expenses, or performance of the Plan's service providers, including without limitation, its administrative and/or recordkeeping service providers; (4) the selection, nomination, appointment, retention, monitoring, and removal of the Plan's fiduciaries; (5) fees, costs, or expenses charged to, paid, or reimbursed by the Plan; (6) the services provided to the Plan or the cost of those services; (7) any alleged breach of the duty of loyalty, care, prudence, diversification, or any other fiduciary duties relating to the Plan's investment options or service providers; (8) engaging in self-dealing or prohibited transactions in related to the Plan's investment options or service providers, or any alleged breach of the duty of loyalty, care, or prudence; and/or (9) any assertions with respect to any fiduciaries or service providers of the Plan (or the selection or monitoring of those fiduciaries) in connection with the foregoing; or c. That would be barred by *res judicata* based on entry of the Final Approval Order and Judgment; or d. That relate to the direction to calculate, the calculation of, or the method or manner of allocation of the Settlement Fund in accordance with the Plan of Allocation or to any action taken or not taken by the Settlement Administrator in the course of administering the Settlement; or e. That relate to the approval by the Independent Fiduciary of the Settlement; and The Class Representative, Class Members and the Plan expressly waive and relinquish, to the fullest extent permitted by law, any and all provisions, rights, and benefits conferred

5

by Section 1542 of the California Civil Code, which provides that a "general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party," and any similar state, federal or other law, rule or regulation or principle of common law of any domestic governmental entity.

*Id. § 1.41.* Released Claims do not include claims to enforce the Settlement Agreement. *Id. § 1.41(f).*

### D.    Class Notice and Settlement Administration

Class Members will receive notice of the settlement via first-class U.S. Mail. *Id. § 2.5(a), & Ex. 2.* To the extent that Class Members would like more information, the Settlement Administrator will establish a Settlement Website on which it will post the Settlement Agreement, Notices, and relevant case documents, including the Second Amended Complaint and a copy of all Court orders related to the Settlement. *Settlement § 2.5(c) and Ex. 2.* The Settlement Administrator also will establish a toll-free telephone line that will provide the option of speaking with a live operator if callers have questions. *Id. § 2.5(d).*

### E.    Attorneys' Fees and Administrative Expenses

The Settlement requires that Class Counsel file their Motion for Attorneys' Fees and Costs no later than the deadline set in the Preliminary Approval Order. *Id. § 7.2(a).* Under the Settlement, the requested fees may not exceed one-third of the Gross Settlement Amount. *Id.* In addition, the Settlement provides for recovery of Administrative Costs related to the Settlement up to $50,000, *id. §§ 1.3, 3.5,* and for a case contribution award up to $7,500 for each of the Named Plaintiffs. *Id § 7.1(a).*

### F.    Review by Independent Fiduciary

As required under ERISA, Defendants will retain an Independent Fiduciary, Fiduciary Counselors, Inc., to review and authorize the Settlement on behalf of the Plan. *Id. §§ 1.29, 2.6; see also* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830. The Independent Fiduciary shall be paid from the Gross Settlement Amount. The Independent Fiduciary will issue its report no later than thirty (30) calendar days before the Fairness Hearing.,

*Settlement,* § 2.6(c), so it may be considered by the Court.

**ARGUMENT**

## I.      Standard of Review

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. This involves a two-step process. *See* MANUAL FOR COMPLEX LITIGATION §§ 21.61–.63, at 308–23 (4th ed. 2004). First, counsel submit the proposed settlement terms to the court, and the court makes a preliminary fairness evaluation. *Id.* § 21.632. Second, following preliminary approval, class members are provided notice of a fairness hearing, at which time arguments and evidence may be presented in support of, or opposition to, the settlement. *Id.* §§ 21.633–.634.

In 2018, Rule 23 was amended to specify uniform standards for settlement approval. *See* Fed. R. Civ. P. 23(e) advisory cmte note (2018). The amended rule states that, at the preliminary approval stage, the court must determine whether it "will likely be able" to approve the proposal. Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), in turn, specifies the following factors the court should consider at the final approval stage in determining whether a settlement should be approved:

    (A)      the class representatives and class counsel have adequately represented the class;

    (B)      the proposal was negotiated at arm's length;

    (C)      the relief provided for the class is adequate, taking into account:
        (i)      the costs, risks, and delay of trial and appeal;
        (ii)     the effectiveness of any proposed method of distributing relief to the class;
        (iii)    the terms of any proposed award of attorney's fees; and
        (iv)     any agreement required to be identified under Rule 23(e)(3); and

    (D)      the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The rule largely encompasses the factors that have been employed by the Sixth Circuit:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*See Macy v. GC Servs. Ltd. P'ship*, 2019 WL 6684522, at *2 (W.D. Ky. Dec. 6, 2019) (citing *Pelzer v. Vassalle*, 655 F. App'x 352, 359 (6th Cir. 2016); *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).[5]

At this stage, a settlement on its face represents a bargained give and take between the litigants that is presumptively valid. *See Berry v. Sch. Dist. of City of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998). The ultimate fairness determination is left for final approval, after class members receive notice of the settlement and have an opportunity to be heard. For the reasons that follow, this Court should grant preliminary approval of the Settlement and authorize notice to the Settlement Class.

## II.   The Settlement Meets the Standard for Preliminary Approval

### A.   The Class Is Adequately Represented

The record reflects that the Class is adequately represented. Class Counsel are experienced ERISA litigators with a proven track record. *See Secunda Decl. ¶¶ 25–27*. The named Plaintiffs are also adequate class representatives, who have diligently pursued this action on behalf of the Class after acknowledging their duties as class representatives. *See Miller Decl. ¶¶ 2–3; Lamunyon Decl. ¶¶ 2–3*.

### B.   The Proposal Was Negotiated at Arm's-Length

Where experienced counsel have negotiated a settlement at arm's-length, with the help of an experienced mediator, a strong initial presumption is created that the compromise is fair. *See In re Skelaxin (Metaxalone) Antitrust Litig.*, 2015 WL 13650515, at *2 (E.D. Tenn. Jan. 16, 2015)

---

[5] The Sixth Circuit does not appear to have considered the new version of Rule 23(e)(2). *See Macy*, 2019 WL 6684522, at *2. Since the amendment, courts within the Sixth Circuit have been applying both sets of factors. *See, e.g., Elliott v. LVNV Funding, LLC*, No. 3:16-cv-00675-RGJ, 2019 WL 4007219 at *9, 2019 U.S. Dist. LEXIS 143692 at *18 (W.D. Ky. Aug. 23, 2019) (citing *Peck v. Air Evac EMS, Inc.*, No. CV 5:18-615-DCR, 2019 WL 3219150, 2019 U.S. Dist. LEXIS 11826 (E.D. Ky. July 17, 2019)).

("This presumption is appropriate here and, in any event, the undisputed evidence shows that the settlement was negotiated in good faith and without collusion. Arms-length settlement negotiations took place under the auspices of a mediator appointed by this Court."). That is exactly the situation here: settlement negotiations took place in the context of an arm's length mediation session before an experienced and impartial mediator. *See Secunda Decl.* ¶ *10 & Ex. B.*

Also, relevant here: (1) Class Counsel undertook an extensive investigation of the factual and legal bases for Plaintiff's claims prior to commencing the action, *Secunda Decl.* ¶ *8*; and (2) Class Counsel had the necessary experience and qualifications to evaluate the Parties' legal positions, *id.* ¶¶ *12–27*. These circumstances further favor approval of the Settlement. Courts in this Circuit consistently approve class action settlements reached through arms-length negotiations after meaningful mediation discovery or a similar investigation. *See Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at *4 (S.D. Ohio Feb. 18, 2021) (citing *See Koenig v. USA Hockey*, 2012 WL 12926023, at *4 (S.D. Ohio Jan. 10, 2012); *see also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (noting that, "although formal discovery had not commenced, [plaintiffs] had access to extensive public documents," and settlement was reached "after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated" before an experienced mediator); *Dolins v. Cont'l Cas. Co.*, No. 1:16-cv-08898, Dkt. 133, at *5 (N.D. Ill. Sept. 20, 2018) ("The negotiations were supported by a robust investigation before commencement of the Lawsuit; the production and review of confidential documents … during mediation discovery; and extensive legal and factual research on the issues in the case.").

## C.     The Settlement Terms Are Fair and Adequate

### 1.     The Monetary and Prospective Relief Is Significant

The product of these serious and informed negotiations is a Settlement that provides

significant benefits to the class.

The negotiated monetary relief represents a significant portion of the settlement demand of $9.8 million at the facilitative mediation. *Secunda Decl.* ¶ *4 & n.1*. Based on this demand, the $1,300,00 million dollar recovery represents 13.3% of the total estimated losses. This is on par with numerous other ERISA class action settlements that have been approved across the country.[6]

### 2.    The Risks, Costs, and Delay of Further Litigation Were Significant

In the absence of a settlement, Plaintiffs would have faced potential risks. At the time of settlement, although Plaintiffs had partially withstood Defendants' motion to dismiss, there was a risk that the Court might have dismissed the claims on the renewed motion to dismiss or summary judgment. If the case proceeded to trial, the Defendants still might have prevailed.[7] Finally, even if Plaintiffs prevailed on liability, issues regarding loss would have remained. *See* Restatement (Third) of Trusts, § 100 cmt. (b)(1) (determination of investment losses in breach of fiduciary duty cases is "difficult").

At a minimum, continuing the litigation would have resulted in complex and costly proceedings, and significantly delayed any relief to the Class. ERISA cases such as this can extend up to a decade before final resolution, sometimes going through multiple appeals.[8] The duration of these

---

[6] *See, e.g.*, *Toomey v. Demoulas Super Markets, Inc.*, No. 1:19-cv-11633, Dkt. 95 at 10 (Mar. 24, 2021), *approved* Dkt. 100 (D. Mass. Apr. 7, 2021) (approving settlement that represented approximately 15–20% of alleged losses); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-cv-00563, Dkt. 211 (May 20, 2020), *approved* 2020 WL 6114545, at *1 (S.D.N.Y. Oct. 7, 2020) (16% of alleged losses); *Price v. Eaton Vance Corp.*, No. 18-12098, Dkt. 32 at 12 (May 6, 2019), *approved* Dkt. 57 (D. Mass. Sept. 24, 2019) (23% alleged losses); *Sims v. BB&T Corp.*, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (19% of estimated losses); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 8334858 (C.D. Cal. July 30, 2018) (25% of estimated losses); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 2018 WL 2183253, at *6–7 (N.D. Cal. May 11, 2018) (approximately 10% of losses under Plaintiffs' highest model); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

[7] *See, e.g.*, *Rozo v. Principal Life Ins. Co.*, 2021 WL 1837539 (S.D. Iowa Apr. 8, 2021); *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018), *aff'd*, 9 F.4th 95 (2d Cir. 2021); *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019).

[8] *See, e.g.*, *Spano v. Boeing Co.*, 2016 WL 3791123, at *1, 4 (N.D. Ill. Mar. 31, 2016) (9 years); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *1 (S.D. Ill. July 17, 2015) (8.5 years); *Beesley v. Int'l Paper Co.*, No. 3:06-cv-00703, Dkt. 559 (S.D. Ill. Jan. 31, 2014) (more than 7 years).

cases is, in part, a function of their complexity, which further weighs in favor of the Settlement. *See Karpik*, 2021 WL 757123, at *4 ("The complexity inherent in class actions is amplified in ERISA class actions. Indeed, it is well-recognized that 'ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation.'") (quoting *Krueger v. Ameriprise*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015)).

None of this is to say that Plaintiffs lacked confidence in their claims. However, given the risks and costs of litigation, it was reasonable for Plaintiffs to reach a settlement on these terms. *See Karpik*, 2021 WL 757123, at *5 ("The Court finds that this complexity, along with the potential risk, cost, and additional delay, strongly favors approval of this Settlement, which secures an immediate, substantial benefit for the Class Members.").

### 3.   The Proposed Method of Distributing Relief to The Class Is Effective

Consistent with numerous other ERISA settlements that have received court approval,[9] current Participants will have their Plan accounts automatically credited with their share of the Settlement, and former Participants will receive their pro-rata amount by check. *See supra* at 5. This method of distribution is both effective and efficient.

### 4.   The Settlement Imposes a Reasonable Limitation on Attorney's Fees

The amount of any fee award is reserved to the Court in its discretion. *See Settlement § 7.2(a).* However, Class Counsel have agreed to limit their request to one-third of the settlement amount. *Id.* This is the amount typically awarded in complex ERISA cases such as this. *See Bell v. Pension Comm. of ATH Holding Co.*, 2019 WL 4193376, at *3 (S.D. Ind. Sept. 4, 2019) (collecting cases).

### 5.   No Separate Agreements Bear on the Adequacy of Relief to the Class

There are no side agreements relating to the Settlement. As the Settlement plainly and

---

[9] *See, e.g., Kinder v. Koch Indus., Inc.*, 2021 WL 3360130, at *1–2 (N.D. Ga. July 30, 2021); *Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at *2 (S.D. Ohio Feb. 18, 2021); *Dolins v. Cont'l Cas. Co.*, No. 1:16-cv-08898, Dkt. 122-1 § 9 (N.D. Ill. Aug. 6, 2018).

expressly states: "The Agreement is the entire agreement among the Parties, and it supersedes any prior agreements, written or oral, between the Parties.  The Agreement cannot be altered, modified, or amended except through a writing executed by either (a) Plaintiff and Defendants, or (b) Class Counsel and Defendants' Counsel." *Settlement § 10.5.*

### 6.       The Settlement Treats Class Members Equitably

The Settlement treats Class Members equitably. As noted above, the Settlement Amount will be allocated among eligible Class Members on a *pro rata* basis, the same allocation formula is used to calculate settlement payments for all eligible Class Members, and that formula is tailored to the claims asserted in the case. *See supra* at 5; *Secunda Decl. ¶ 6.* This further supports approval of the Settlement.

### 7.       The Class Notice Plan is Reasonable and Should be Approved

The Court also must ensure that notice is sent in a reasonable manner to all class members who would be bound by the settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice proposed here, as the Settlement Administrator will individually mail notices of the Settlement to Class Members. *Settlement ¶ 2.5(a).* This type of notice is presumptively reasonable. *See Phillips Petrol. Co. v. Shutts,* 472 U.S. 797, 812 (1985); *Snyder v. Ocwen Loan Serv'g,* 2019 WL 2103379, at *8 (N.D. Ill. May 14, 2019). Moreover, the content of the Notices is also reasonable, as they contain information regarding the terms of the Settlement, the claims asserted in the action, the definition of the class, the scope of the class release, the process for making an objection, Class Members' right to appear at the Fairness Hearing, and the proposed attorneys' fees, expenses, and service awards. *See Settlement Ex. 2.*

### 8.    The Proposed Class Should be Certified for Settlement Purposes

Finally, this Court should certify the Settlement Class for settlement purposes.[10] "ERISA class actions are commonly certified" under Rule 23 because ERISA breach of fiduciary duty claims are brought on behalf the plan as a whole. *Neil v. Zell*, 275 F.R.D. 256, 267 (N.D. Ill. 2011). That is precisely the nature of this action. *See Dkt. 59*, ¶ 13 (citing 29 U.S.C. §§ 1109, 1132(a)(2)).

### A.    The Proposed Settlement Class Satisfies Rule 23(a)

Rule 23(a) of the Federal Rules of Civil Procedure sets forth four requirements applicable to all class actions: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 620. Each of these requirements is met in this case.

**Numerosity.** As noted above, there are approximately 9,100 Class Members. *Sexe supra* at 4. This far exceeds the threshold for numerosity. *See Neil*, 275 F.R.D. at 260.

**Commonality.** "[T]he commonality requirement is typically easily satisfied in ERISA cases." *Shanechian v. Macy's, Inc.*, 2011 WL 883659, at *3 (S.D. Ohio March 10, 2011); *see also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 452 (S.D.N.Y. 2004) ("In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries."). Here, as in other ERISA cases, there are common questions, such as (1) whether the Plans' investment fees were excessive and whether certain investments underperformed; (2) whether Defendants breached their fiduciary duties to the Plans; and (3) whether the Plans suffered losses from the alleged fiduciary breaches. Accordingly, commonality is satisfied. *See, e.g., Neil*, 275 F.R.D. at 260–61; *Godfrey v. GreatBanc Tr. Co.*, 2021 WL 679068, at *4 (N.D. Ill. Feb. 21, 2021).

**Typicality.** The typicality requirement "tend[s] to merge" with commonality. *Gen. Tel. Co. v.*

---

[10] In the context of a settlement, class certification is more easily attained because the court need not inquire whether a trial of the action would be manageable on a class-wide basis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

*Falcon*, 457 U.S. 147, 157 n.13 (1982). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Godfrey*, 2021 WL 679068, at *5. Typicality is satisfied here because the "ERISA claims share the same 'essential characteristics' of the 'claims of the class at large' in that they seek to (1) obtain recovery owed to the Plan[s] and (2) hold fiduciaries accountable for breaching their duties." *Id.* (citing *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993)).

*Adequacy.* The adequate representation inquiry considers the adequacy of the named plaintiffs and class counsel. *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011), *as modified* (Sept. 22, 2011). Both are adequate here for the reasons noted above. *See supra* at 10.

The named Plaintiffs have no known conflicts of interest with other Class Members, have assisted in pursuing the action, and have acknowledged their responsibilities as class representatives. *See Miller Decl. ¶¶ 2–3; Lamunyon Decl. ¶¶ 2–3* This is sufficient to demonstrate adequacy. As a member of the Plan, their interests are aligned with other class members'. *See Rush v. GreatBanc Tr. Co.,* 2021 WL 2453070, at *7 (N.D. Ill. June 16, 2021); *Godfrey*, 2021 WL 679068, at *5–6.

For their part, Class Counsel are experienced ERISA litigators. *See supra* at 10; *Secunda Decl. ¶¶ 25–27*. Thus, Class Counsel are also adequate to represent the Class.

### B.      The Proposed Class Satisfies Rule 23(b)(1)

In addition to meeting the requirements of Rule 23(a), the proposed Class satisfies Rule 23(b)(1). Under Rule 23(b)(1), a class may be certified if prosecution of separate actions by individual class members would create a risk of:

> (A)    inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

> (B)    adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). The claims here plainly satisfy this test because they are brought derivatively on behalf of the Plan under ERISA, *see* 29 U.S.C. §§ 1109 and 1132(a)(2), and the outcome will necessarily affect the participants in the Plan and the Plan's fiduciaries. *See Godfrey*, 2021 WL 679068, at *7. Indeed, courts have held that "breach of fiduciary duty claims brought [section 1132(a)(2)] are 'paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class.'" *Neil*, 275 F.R.D. at 267–68 (collecting cases); *In re Household Int'l, Inc. ERISA Litig.*, 2004 WL 7329911, at *2 (N.D. Ill. Nov. 22, 2004).[11] This case is no exception.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) preliminarily approve the Parties' Class Action Settlement Agreement; (2) approve the proposed Settlement Notices and authorize distribution of the Notices to the Settlement Class; (3) preliminarily certify the Settlement Class for settlement purposes; (4) schedule a final approval hearing; and (5) enter the accompanying Preliminary Approval Order.

Dated this 22nd day of September, 2023

**WALCHESKE & LUZI, LLC**

s/ Paul M. Secunda
Paul M. Secunda
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Fax: (262) 565-6469
E-Mail: psecunda@walcheskeluzi.com

**HANEY LAW FIRM, P.C.**

Troy W. Haney
330 E. Fulton
Grand Rapids, MI 49503

---

[11] The Advisory Committee Notes to Rule 23 expressly recognize that class certification is appropriate under Rule 23(b)(1)(B) in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23, Advisory Committee Note (1966).

Telephone: (616) 235-2300
Fax: (616) 459-0137
E-Mail: thaney@troyhaneylaw.com

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2023, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record

Dated:  September 22, 2023                                   s/Paul M. Secunda
                                                            Paul M. Secunda